

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 22 2016

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ISRAEL TREY RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:16-CV-662-A |
| | § | |
| WISE COUNTY JAIL, SHERIFF | § | |
| OFFICE, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

After having thoroughly considered the record in the above-captioned action, the testimonial statements given by plaintiff, Israel Trey Rodriguez, during a telephone/<u>Spears</u>[1] hearing, documents received by the court for consideration as part of the <u>Spears</u> hearing process, and pertinent legal authorities, the court has concluded that all claims asserted by plaintiff in the above-captioned action should be dismissed pursuant to the authority of 28 U.S.C. § 1915A.

I.

<u>Statutory Authority for the Dismissal</u>

As plaintiff is a prisoner seeking redress from government officials, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A.   <u>See</u> <u>Martin v. Scott</u>, 156 F.3d 578, 579-

---

[1] <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).

80 (5th Cir. 1998). Section 1915A(b)(1) mandates <u>sua sponte</u> dismissal if the court finds that the complaint either is frivolous or fails to state a claim upon which relief may be granted.

Having upon preliminary screening considered plaintiff's pleaded claims against defendants, the court concludes that they should be dismissed under the authority of 28 U.S.C. § 1915A both because the allegations he made against defendants were frivolously made and because of plaintiff's failure to state a claim upon which relief may be granted against Wise County, Texas, and certain of the individual defendants.

II.

<u>Plaintiff's Pleaded Claims</u>

Plaintiff initiated this action on July 11, 2016, by the filing of a form Prisoner's Civil Rights Complaint.[2] He named as defendants: Officer Lieutenant David Armstrong ("Armstrong"); Wise County Jailers, Guards; Officer Sergeant Bruener [sic] ("Brunner")[3]; Officer Sergeant Thomas ("Thomas"); Officer Shepps ("Shepps"); Administrator Rick Denney ("Denney"); Officer Fabela ("Fabela"); Officer Vallez ("Vallez"); Sergeant Taylor

---

[2]The envelope the item came in showed that plaintiff was an inmate of a unit of the Texas Department of Criminal Justice.

[3]Records of Wise County jail indicate that the correct spelling of this defendant's name is "Brunner."

2

("Taylor"); Sheriff David Walker ("Walker"); Captain Gillan ("Gillan"); Medical Nurse, Medical Officer.

His claims relate to his having been sprayed with a chemical substance while in the Wise County, Texas, jail from May 19-21, 2015. He claimed he was sprayed multiple times with multiple chemicals, and contended that all but one of the persons he sued participated in spraying him, or were in some manner responsible for his having been sprayed. Defendant Medical Nurse, Medical Officer allegedly refused to help him when he requested medical attention while the chemical agents ate away his skin. According to his complaint, the chemical agent damaged his face. He alleged in a statement he submitted with his complaint that once he was released from jail on May 21, 2015, he reported to his parole station in Mineral Wells, Texas, and that while he was there a parole officer took pictures of his face and the open wounds caused by the chemical agent, and documented the incident that caused the damage to his face. He said that he was being recorded as he was being questioned. He added that his parole officer, Stuarte, visited him before he was released from the Wise County Jail on May 21, 2015, and had witnessed the incident while he was incarcerated in the jail.

Plaintiff asserted claims under 42 U.S.C. § 1983 for excessive force to recover $1.2 million in damages he suffered as

a result of having been sprayed.  He attached to his complaint a photograph of his face showing red spots on his face that he claims the chemical agents caused.

On July 27, 2016, plaintiff filed another item headed "Complaint," apparently intending the document to be an amended complaint.  The July 27 filing contained basically the same allegations plaintiff made in his July 11 filing.  He listed what he characterized as his claims A, B, C, D, E, F, G, H, I, and J, the allegation of each of which relates to his contention that he was injured when sprayed with chemicals during his May 19-21, 2015 jail stay.  He added in this pleading that he has been diagnosed with P.T.S.D., claimed that he is currently taking medication to treat the P.T.S.D., and said that the incident that happened on May 19-21, 2015, caused the P.T.S.D.

On August 12, 2016, plaintiff filed a document by which he asked permission to add supplemental claims to his amended complaint.  As part of that document he submitted what appear to be his supplemental claims K, L, and M, which do not seem to add anything to the claims he described in his earlier filings.

On August 24, 2016, plaintiff filed a document disclosing he had learned from an order of the court that the court planned to have a Spears hearing.  He expressed the concern that the court might not have received the photograph that he included with his

4

July 11 filing that, according to him, showed open wounds on his face.

On September 6, 2016, plaintiff filed a document requesting permission to add a claim N to his amended complaint pursuant to 42 U.S.C. § 1983.  The wording of his proposed claim N was included in the filing.  It did not add anything new.

On September 19, 2016, plaintiff filed two documents.  One asked permission to add claims N, O, P, Q, and R to his amended complaint.  So far as the court can tell, what he designated as claims N, O, P, Q, and R do not add anything to his previous complaints, except to say that he has flashbacks of the anguish inflicted on him by the Wise County jail in May 2015 and that he has anxiety problems for which he has to take medication to control.  By the time he prepared the September 19 filings, he had received copies of the records the court had requested agencies to provide the court for use during the Spears hearing, and he commented in the September 19 document on the contents of some of those records.

The second September 19 document appeared to be criticisms of records the Office of the Attorney General of Texas had provided for the court's information in response to a request made in the Spears hearing order.  Plaintiff said that he is "currently taking Dx of P.T.S.D. because of the Anxiety that was

5

caused from Wise County Jail Sheriff office violating [his] 8th
Amendment by causing [him] physical injuries and open wounds as
Documented."   Doc. 25 at 2d unnumbered page.[4]

Plaintiff's most-recent filing, which was received by the
clerk on November 9, 2016, was a request by plaintiff to file a
Second Supplemental Claim to the First Amended Complaint for the
purpose of asserting claims against Wise County.  He alleged that
Wise County is an indispensable party.  This filing came after
the October 24, 2016 telephone Spears hearing when, near the end
of his testimony, plaintiff informed the court that he intended
to sue the individuals he named in his complaint in their
official capacities rather than their individual capacities,
Doc. 31 at 47-48; and, he explained that his intent was to sue
Wise County.  Id. at 48-49.

The court is considering the filings mentioned above,
collectively, as constituting plaintiff's complaint.

---

[4]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in
this Case No. 4:16-CV-662-A.

III.

The *Spears* Hearing and Preparation for the Hearing

A.   Documents and Information Provided by Wise County and State
     Officials in Advance of the *Spears* Hearing[5]

1.   Documents Provided by Wise County

On July 28, 2016, the court issued an order informing

plaintiff of the court's conclusion that it could better evaluate

whether all or some of his claims should be permitted to go

forward if the court were to conduct a <u>Spears</u> hearing; and, in

the same order, the court requested Wise County to provide the

court in advance of the hearing certain information and

documentation from which the court might benefit in conducting

the hearing.   Doc. 11.

Wise County's response, which was received on August 10,

2016, listed three times when plaintiff was an inmate in the Wise

County jail, and provided copies of records pertaining to

plaintiff's May 19-21, 2015 stay in the jail.

---

[5]"[T]he court may require the defendants in prisoner-rights cases to construct an administrative record to assist the court in determining whether the complaint is frivolous." <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997); <u>see also</u> <u>Wilson v. Barrientos</u>, 926 F.2d 480, 483 (5th Cir. 1991)(on rehearing)(approving an arrangement between the district court and the attorney general's office that the court would be furnished with "such medical and other prison records as were requested, for use by the complainant[s] and review by the court in its 28 U.S.C. § 1915(d) determination about the viability of the complaint.").

7

The records contained the following description of the circumstances that led up to plaintiff's arrest:

01. On 05/19/2015, Sgt. Hughes was dispatched to 637 Hunter Trail in reference to a medical call. Upon arrival, Hughes met with owner of the residence identified as James Dakes.

02. James advised the following information; his step-son, identified as Israel Trey Rodriguez (W/M, DOB 09/13/1993) in currently under the influence of Methamphetamines and has been attempting to enter into his neighbor's homes on Hunter Trail. James also advised he wishes to have Trey issued a criminal trespass warning for his property.

03. Hughes met with Trey and he admitted to his use of Methamphetamines (ICE). Hughes used a flash light which emits a light at approximately 300 lumens and observed Treys pupils did not close and trey did not appear to have any discomfort from the exposure to the light. Trey demanded to speak with the Texas Attorney General, Officer Snodgrass and Investigator Lanier in reference to the drug issues in Wise County.

04. Hughes placed Trey under arrest for Public Intoxication and Disorderly Conduct by placing him into double locked handcuffs and seating him into the right rear seat of unit # 345. Hughes transported Trey to the Wise County Jail without incident. Hughes also issued Trey a criminal trespass warning and left a copy with his personal property in the jail. Hughes has given the original trespass warning to Wise County Central Dispatch. Hughes cleared this call for service with an incident report.

Doc. 13 at ECF 23.[6]  The handwritten report of plaintiff's arrest

showed that the time of arrest was 11:55 on May 19, 2015, and

---

[6]ECF ___ refers to the page number references in the ECF header at the tops of the pages in the specified document.

8

added that "Trey admitted to have used meth. as well as attempting to enter residences on Hunter Trail without permission". Id. at ECF 24.

Another Wise County jail record disclosed that "INMATE VERY BELIGERANT [sic] AND COMBATIVE AMONG [sic] ARRIVAL INTO THE FACILITY." Id. at ECF 25. Because of plaintiff's conduct, shortly after he was brought to the jail, Sergeant Brunner, in the company of Officer Davis, sprayed plaintiff through his cell's food tray slot with an OC Chemical Agent in an attempt to stop his yelling and banging on the door/window of his cell notwithstanding warnings he had received that he would be pepper sprayed if he continued his disruptive conduct. The report by Brunner of these events in the jail records disclosed that:

> On 05-20-2015, at approximately 0050 hours, inmate Rodriguez, Israel was brought to the jail by Wise County Patrol Sergeant Hughes. Due to inmate Rodriguez's mental state, he was changed out and placed in Detox 2 by Sergeant Brunner and Officers Davis and Hacker.
>
> At approximately 0109 hours inmate Rodriguez began yelling and banging on Detox 2's cell window and door. Sergeant Brunner went to Detox 2 and gave inmate Rodriguez a verbal warning to stop yelling and banging on the door/window, or he would be pepper sprayed. Shortly, after Sergeant Brunner departed the area, inmate Rodriguez began yelling again and hit the cell's door very hard. Sergeant Brunner went to control and retrieved OC Chemical Agent at that time.
>
> A short time later, Sergeant Brunner was met by Officer Davis at booking. Officer Davis took possession

of the OC Chemical Agent and both he and Sergeant
Brunner proceeded to Detox 2. The cell's food tray slot
was opened and Officer Davis applied OC Chemical Agent
on inmate Rodriguez at approximately 0117 hours.
Afterwards, the food tray slot was closed and both
officers departed the area.

     Later, Sergeant Brunner and Officers Davis and
Hacker escorted inmate Rodriguez to the shower in
booking, where he was allowed to shower. He was
provided ice water, clean  clothing, a mat and blanket.

     After he was finished showering, inmate Rodriguez
was placed in Detox 1 and is being compliant with all
officer's directives, at this time. EOR

Id. at ECF 44.  That description of events was confirmed by a

report of Officer Davis.  Id. at ECF 45.

A medical screening record based on an evaluation made

shortly after plaintiff was booked into the jail noted that the

screener suspected mental illness/mental retardation and observed

plaintiff to be under the influence of something intoxicating,

and said that he "ADMITTED TO BE ON METH."  Id. at ECF 12.  A

medical and mental screening form contained the observations that

plaintiff said he was on meth, that his speech was rapid, and

that he was experiencing withdrawals.  Id. at ECF 13.  Another

form shows that shortly after plaintiff was admitted to the jail

he had an open wound.  Id. at ECF 11.

At 4:04 a.m. on May 20, 2015, a Medical Sick Call Request

was made out for plaintiff, but indicates that he refused to sign

it.  Id. at ECF 17.

At 5:55 a.m. on May 20, 2015, Sergeant Thomas placed plaintiff on Special Watch, which meant that plaintiff was checked every thirty minutes because of mental concerns. Id. at ECF 18. That same form indicated that, at the direction of Sergeant Brunner, plaintiff was to be escorted by two officers at all times. Id. A memo by Sergeant Thomas said that at 6:21 a.m., due to plaintiff's behavior, Thomas placed him on a twenty minute mental watch. Id. at ECF 26.

The jail records disclose that later in the morning on May 20, 2015, plaintiff was again subjected to pepper spray. Id. at ECF 19 & 27. A detailed description of that incident is contained in a report prepared by Sergeant Thomas:

> On 05/20/2015, at approximately 0955 hrs., Sgt. Thomas sprayed inmate Rodriguez with a 3 sec burst of O.C. spray. Inmate Rodriguez had been warned several times during the morning that if he continued to cause a disruption of the facility programs or continued to hit on the cell door and walls that he would be sprayed with O.C. gas. Inmate Rodriguez was behaving as if he were intoxicated on some type of drug causing him to behave irrationally and disruptive, he was sprayed with O.C spray during the 3rd shift because of behavioral issues and had calmed down until 1st shift came on duty at which time he started yelling out and hitting the cell door. While Sgt. Thomas was deploying the O.C. spray inmate Rodriguez charged Sgt. Thomas grabbing at his arms and legs at which time Sgt. Thomas delivered a leg strike to inmate Rodriguez upper right thigh, causing Rodriguez to retreat. Sgt. Thomas, along with Officer Fabela and Officer Raper, exited the cell and secured the cell door. Inmate Rodriguez calmed down after approximately 5 minutes and complied with being hand cuffed and taken to the booking shower to be

> decontaminated. After allowing the inmate to shower and
> change his jail clothing he was placed in cell detox 2
> without further incident.

Id. at ECF 27.  Officer Fabela made a report of the same

incident, which is consistent with Sergeant Thomas's, reading as

follows:

> On 05/20/2015, at approximately 1000 hrs.,
> Rodriguez, Israel #85118 was causing a disturbance in
> the booking area in cell holding 4 by screaming and
> banging on the door. Inmate was given numerous orders
> to stop causing a disturbance and to settle down.
> Inmate refused to follow directives and continued to
> cause a disturbance. At that time Sgt. Thomas, along
> with Officers Raper and Fabela, accessed holding 4 and
> Sgt. Thomas then proceed to give the inmate a 3 sec.
> burst of O.C. spray. Inmate then dropped to the ground
> and started grabbing at Sgt. Thomas legs trying to take
> him to the ground. Sgt. Thomas then followed up with
> leg strikes to inmate's lower body until inmate began
> to retreat and at that time officers were able to exit
> the cell safely.

Id. at ECF 28.  A report by Officer Raper of the 10:00 a.m.

incident is consistent with the reports made by Thomas and

Fabela.  Id. at ECF 29.

The jail records show that after having posted a bail bond,

plaintiff was released from custody shortly after Noon on May 21,

2015.  Id. at ECF 38-42.

2.   Documents Received from State Officials

After having received the document plaintiff filed July 27,

2016, in which he said that he had been diagnosed with P.T.S.D.

and was taking medicine to treat it, the court issued an order on

August 15, 2016, requesting the Texas Attorney General to provide information for use in the <u>Spears</u> hearing concerning the records of the Texas Department of Criminal Justice pertaining to any treatment for, or diagnosis of, any condition of plaintiff that could be related to the incident of which plaintiff complained in his July 27, 2016 filing. Doc. 16. A copy of the July 27 filing was made an exhibit to the order. <u>Id.</u> at ECF 4. On August 29, 2016, the Office of the Attorney General responded by filing a document titled "Martinez Report." Doc. 19. It was accompanied by a set of records that were authenticated to be records pertaining to medical care of plaintiff while an inmate at facilities of Texas Department of Criminal Justice during the pertinent time period. <u>Id.</u>

The Martinez Report gave the following explanation of the medical records that were submitted with it:

### Statement of the Facts

Offender Rodriguez claims that in May of 2015, he was allegedly sprayed with chemical agents by officers at the Wise County Jail. Offender Rodriguez claims that, as a result, he suffered burns on his face, and then in July 2016, he was diagnosed with post-traumatic stress disorder as a result of this alleged incident.

### Discussion

Offender Rodriguez has medical records dating back to 2011. In 2015 and 2016, Plaintiff only had a handful of medical visits, they consisted of the

following. Offender Rodriguez received an intake review on June 21, 2016 when he entered the Gurney Unit. No injuries, or post-traumatic stress disorders were noted. On July 15, 2016, Offender Rodriguez received care for an injured wrist and knee after getting into a fight. On July 29, 2016, Offender Rodriguez received a dental chain in review.

Offender Rodriguez's outpatient mental health evaluation is the first mention in his records of possible post-traumatic stress disorder. On July 11, 2016, Offender Rodriguez received a mental health evaluation where he stated that he was suffering from post-traumatic stress disorder after an alleged incident where he states that he was sprayed with chemical agents. The medical unit did not find obvious signs of post- traumatic stress, however, recommended a trial of Zoloft. On August 2, 2016, at his mental health evaluation, it was noted that the possibility of post-traumatic stress disorder was ruled out by the medical professionals as one of the possible causes for his problems.

Offender Rodriguez filed one grievance with TDCJ. This grievance was filed on July 13, 2016, and regarded his request for copies of his alleged injury regarding this matter.

There are no additional medical or grievance records for Offender Rodriguez. There are no records that indicate that Offender Rodri[g]uez was ever[] sprayed with a chemical agent. There are no records indicating that Offender Rodriguez had any facial injuries within the last two years. There are also no records from a medical department confirming that Offender Rodriguez suffers from post-traumatic stress disorder.

## Conclusion

The Office of the Attorney General has not found any records that substantiate Plaintiff's claims.

Id. at ECF 2-3 (footnotes omitted).  A review of the records supplied with the Martinez Report confirms the accuracy of the above-quoted statements made in the Report.

On September 1, 2016, the Texas Department of Criminal Justice submitted a group of medical records that appear to be identical to those the Office of the Attorney General provided with the Martinez Report.  Doc. 21.

B.   Plaintiff's *Spears* Hearing Testimony

On October 19, 2016, the court issued an order that plaintiff be present at a telephone conference/hearing on October 24, 2016, in the nature of a Spears hearing.  Doc. 27. Such a hearing was conducted on that date.  Docs. 28 & 31.

Plaintiff was placed under oath at the commencement of the hearing, and acknowledged that he knew that he was under oath and that if he answered any of the court's questions falsely, he could be prosecuted for perjury or making a false statement under oath.  Doc. 31 at 6-7.

The court started the questioning by attempting to determine from plaintiff what caused him to be taken into custody on May 19, 2015.  After relating what seemed to be rather bizarre descriptions of what he was doing when he was taken into custody, he finally said that he could not remember what caused him to be taken into custody, saying "it's kind of confusing, you know what

15

I mean? It's just a lot.  A lot was happening." Id. at 13.  The
different explanations he gave before acknowledging his lack of
memory provided insight into plaintiff's mental condition on
May 19-20, 2015.  See, id., at 8-13.

He admitted that he had been using methamphetamine before he
was taken into custody, id. at 10, but he did not remember how
long he had been using it, except to say that "[l]ike when I
started work, when I went to work at Jack in the Box," id. at 13-
14.  He did not remember how long he had worked that day, but
said he used methamphetamine throughout the time he was working.
Id. at 14.  Plaintiff was vague on the subjects of how much
methamphetamine he used before he was arrested, or how frequently
he used it.  Id. at 15.

Plaintiff denied that he was disruptive once he was put in a
jail cell, and said that he was just asking a question, "trying,
you know, to make a phone call where I could call somebody and
see how my family was doing." Id. at 16-17.  He denied that he
received any warning about his conduct before he was sprayed,
though he acknowledged that they told him to quit asking
questions.  Id. at 17-18.  When asked if he could explain why the
jail records showed that he was yelling and banging on the cell
window and doors, he said that he did not know, and that he had
no reason to question whether what the record said actually

16

happened, explaining, "I mean, I remembered everything. I woke up and I just remembered everything." Id. at 18.

He said that he was sprayed with a chemical multiple times. Id. at 18. According to him, he was sprayed the first time by Sergeant Brunner, and that at that time: "They sprayed a whole bottle -- you know those big fire extinguishers? They sprayed me with the whole bottle." Id. at 20-21. Brunner kept on threatening him, saying that he was going to go ahead and spray him again if he did not shut his mouth. Id. at 22.

After he was sprayed, he was taken to the shower, but the shower did not help because he kept burning. Id. at 22. He was in the shower awhile trying to get the gas off him. Id. at 23-24. He washed his face off good, and showered all over. Id. at 24-25. He was provided clean clothes to use when he completed taking a shower. Id. at 25. When asked what happened next, he repeated "[t]hey sprayed me multiple times." Id. at 26. His memory was vague as to what happened after he showered and changed clothes. Id. at 26-29.

When asked how many times he had been in jail, he said that he did not know, he did not keep track of them. Id. at 29. When asked if he had been in jail in Wise County a lot of times, he said "[y]es, Your Honor, since I was 17," and he went on to say

that he can't remember how many times and that "I stopped keeping count after they stopped arresting me."  Id.

He said one of the times when he was sprayed, the shower was off, and he was told to go to the sink to wash it off, and he tried, but he could not wash it off.  Id.  After he repeatedly said that he had been sprayed multiple times, the court asked him to tell about each time he was sprayed.  He said that Thomas sprayed him, and that Thomas kicked him because he was on the ground.  Id. at 30.  According to plaintiff, Thomas sprayed him when he was on the phone talking to his mother.  When Thomas sprayed him, it might have been the third or fourth time.  Id. at 31.  The time Thomas sprayed him was the last time he was sprayed.  When asked to tell who sprayed him any other time, he said that Sergeant Brunner did.  Id.  Then he said that another officer sprayed him when he was in booking, an incident that was not in the report.  Id. at 33.  He added "[i]t was a Lieutenant Armstrong, but I don't know that officer's name."  Id.  He was then asked if he knew the name of anybody who sprayed him besides Thomas and Brunner, and he said "[n]o, sir, but I can name the whole staff, all the officers that were working."  Id.  Finally he said that the only two he can say sprayed him were Brunner and Thomas.  Id. at 34.  He could not remember whether he went to the shower again after Thomas sprayed him, explaining "[i]t's hard to

remember stuff when they're spraying me with that chemical agent. Like you close your eyes and you just fall to the ground." Id. He doesn't remember whether he took a shower and got a change of clothing after Thomas sprayed him. Id.

Plaintiff was questioned about the conduct of each of the individuals he sued. When asked about Armstrong, he said that: "[h]e was on shift and he should have stopped them." Id. at 35. Shepps is the officer who booked him into the jail, and "[s]he just laughed at me and said I deserved what I did." Id. at 37. The only thing Denney did was to be aware of what happened. Id. at 37-38. Fabela participated with Thomas in spraying him; he was with Thomas, but Thomas is the one who did the spraying. Id. at 38. Also, Fabela participated with Thomas when they were kicking him. Id. He then changed his testimony to say that Fabela just happened to be present while Thomas was kicking him, and he is pretty sure that it was not Fabela's idea for Thomas to kick him. Id. at 39. Vallez did not do anything except to threaten to spray him again when plaintiff asked him for medical treatment. Id. at 39-40.

He testified that Vallez, Fabela, Denney, Armstrong, and Taylor did not do anything to harm him, but then he said that they all participated, they were all working together. Id. at 40-41. He said that Walker did not do anything to harm him. Id.

He named Gillan as a defendant because he was a superior officer, not because he did anything harmful to him. <u>Id.</u> at 41-42. He named Medical Nurse, Medical Officer because she neglected to give him medical treatment. <u>Id.</u> at 42.

He currently is in prison based on a conviction of evading arrest in a vehicle. <u>Id.</u> at 47. The evading-arrest offense occurred on July 22, 2015, two months after he was discharged from the Wise County jail.

He is suing all the people he named in the lawsuit as defendants in their official capacities. <u>Id.</u> at 47-48. His intent ultimately is to sue Wise County. <u>Id.</u> at 48. When asked if his "intent is to sue Wise County or to sue these people to get money out of these people," he answered "[t]o sue Wise County." <u>Id.</u> He finally made clear that he was trying to sue Wise County during the following exchange:

> THE COURT: Well, I'm trying to find out who you intend to sue. You named a lot of people, but I get the idea from what you just said, you sued all them in their official capacity?
>
> MR. RODRIGUEZ: No. I was trying to sue the agency.
>
> THE COURT: Which is Wise County?
>
> MR. RODRIGUEZ: Yes, sir.

<u>Id.</u> at 49.

IV.

Analysis

A.   Plaintiff's Claims Do Not Survive Preliminary Screening

    1.   Plaintiff's Claims Are Frivolous

        a.   Pertinent Legal Principles

A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Id. (emphasis added).

When evaluating the frivolousness issue, the court is to bear in mind that the preliminary review provisions for possible sua sponte dismissal are "designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits . . . ." Id. at 327.[7] To that end, the statute "accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly

---

[7]Section 1915A, mandating sua sponte dismissal for, inter alia, frivolousness or failure to state a claim, had, in addition, the goal of helping to bring relief to a civil justice system overburdened by frivolous prisoner lawsuits. See 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995)(Statement of Sen. Dole), 1995 WL 568915 at 17-18; 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995)(Statement of Sen. Hatch), 1995 WL 568915 at 33; see also Walp v. Scott, 115 F.3d 308, 309 (5th Cir. 1997).

baseless." Id. (emphasis added); see also Denton v. Hernandez,
504 U.S. 25, 32 (1992).

With respect to a district court's evaluation as to whether
facts alleged are "clearly baseless," the Supreme Court in
Denton, in response to a request that it define the "clearly
baseless" guidepost with more precision, said "we are confident
that the district courts, who are 'all too familiar' with
factually frivolous claims, are in the best position to determine
which cases fall into this category," and thus declined "the
invitation to reduce the 'clearly baseless' inquiry to a
monolithic standard." Denton, 506 U.S. at 33 (citation omitted).

The Neitzke and Denton decisions both dealt with a version
of 28 U.S.C. § 1915 that contained in its subsection (d) an
authorization for the district court to dismiss a claim filed in
forma pauperis "if satisfied that the action is frivolous."
Neitzke, 490 U.S. at 324; Denton, 504 U.S. at 27. While the
current version of § 1915 in its subsection (e)(2)(B)(i) still
mandates dismissal of an in forma pauperis complaint if it is
frivolous, the court's focus here is the part of the Prisoner
Litigation Reform Act codified as 28 U.S.C. § 1915A, which
directs the court to review "as soon as practicable after
docketing, a complaint in a civil action in which a prisoner
seeks redress from a governmental entity or officer or employee

22

of a governmental entity" (28 U.S.C. § 1915A(a)), and, on review, to "dismiss the complaint, or any portion of the complaint, if the complaint is frivolous," 28 U.S.C. § 1915A(b).

The court has no reason to think that the Supreme Court or the Fifth Circuit would give to the "frivolous" dismissal provision of § 1915A a narrower meaning than that given to the similar dismissal provision in § 1915. In its unpublished opinion in Widner v. Aguilar, 398 F. App'x 976, 978-79 (5th Cir. 2010), the Fifth Circuit equated the two. The legislative history of § 1915A suggests that the courts could well have even broader discretion in the frivolousness evaluations in litigation filed by prisoners against the government or prison employees or officials.

Emphasizing the important role that a Spears hearing can have in the frivolousness inquiry, the Fifth Circuit gave the following explanation in Wilson v. Barrientos:

> We have recognized in our district courts an especially broad discretion in making the determination of whether an IFP proceeding is frivolous. Frivolousness in this context is not coterminous with failure to state a claim, but it is to be equated with the raising of a wholly insubstantial federal claim. Within the context of the Spears hearing the trial judge has the discretion to decide the best way to elicit the complainant's articulation of his grievance

23

and the basis for making any credibility assessment
needed.

926 F.2d 480, 482-83 (5th Cir. 1991)(citations and internal

quotation marks omitted).

"The barrier to frivolous suits embraces not only the

inarguable legal conclusions, but also the fanciful factual

allegation . . . ." Naranjo v. Thompson, 809 F.3d 793, 799 (5th

Cir. 2015)(internal quotations marks omitted)(emphasis added).

In Naranjo, the Fifth Circuit reminded that "[i]f the plaintiff

is a prisoner, the district court must formally review the

complaint immediately after it is filed and dismiss any claims it

deems frivolous." Id. (citing 28 U.S.C. § 1915A(b)(1)).  In the

instant action, this court conducted such a review as soon as

practicable after the court received the official records.

        b.   The *Spears* Hearing Information Shows that
             Plaintiff's Claims are Frivolous

The information acquired through the Spears hearing process

has caused the court to conclude that the allegations made by

plaintiff in his various filings are frivolous and fanciful.

They appear to be but faulty re-creations of events experienced

in May 2015 by a methamphetamine-addled mind.  The official

records inevitably lead to that conclusion.  Plaintiff's Spears

hearing testimony establishes just how uncertain and confused he

is concerning the May 19-20, 2015 events.  Unless there was some

sort of grand conspiracy against plaintiff by the Wise County personnel who arrested plaintiff, brought him to the jail, and had contact with him while he was in the jail, the records from Wise County prove with certainty that the spraying of plaintiff with pepper spray on two occasions was justified, and necessitated, by his conduct, that he was afforded, and took advantage of, an opportunity to clean himself and change clothes after each of the two times he was exposed to the pepper spray, and that the jail employees were appropriately concerned with plaintiff's welfare while he was in jail on May 19 and 20. The court has no reason to think there was any such conspiracy, and is impressed with the consistency of the entries in the Wise County records in descriptions of relevant events. In contrast, plaintiff's versions during the Spears hearing are inconsistent, erratic, and, for the most part, meaningless.

The records received by the court from the State authorities add confirmation to the frivolous nature of plaintiff's claims. They do not bear out, and are inconsistent with, plaintiff's claims that he is having ongoing problems as a result of having been exposed to pepper spray on May 20, 2015.

The frivolous and fanciful nature of plaintiff's factual allegations provides a reason why all his claims should be dismissed pursuant to the authority of § 1915A(b). The court

concludes that all of the claims are fanciful and clearly baseless.

    2.   <u>Other Reasons Why Dismissal at This Time Is Appropriate</u>

    The screening process of § 1915A(b) contemplates that:

>       On review, the court shall . . . dismiss the complaint, . . . if the complaint--
>
>       (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>       (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

    All of the individual defendants are eligible to assert the qualified immunity defense.  Although a plaintiff is not obligated to anticipate such a defense in his complaint at the risk of dismissal under Rule 12 of the Federal Rules of Civil Procedure, <u>see</u> <u>Schultea v. Wood</u>, 47 F.3d 1427, 1430 (5th Cir. 1995), the wording of § 1915A(b)(2) suggests that qualified immunity is a factor the court should consider in the screening process.  The records of Wise County provide strong evidence that none of the individual defendants violated any of plaintiff's Constitutional rights, and that, even if they had, they conducted themselves as a reasonable jail employee would have thought appropriate under the circumstances, and not in violation of any constitutional excessive force constraint.

Moreover, as to the individual defendants, a fair reading of plaintiff's Spears hearing testimony is that he is not intending to sue the employees of Wise County in their individual capacities, but, instead, is seeking only to recover damages from Wise County. That, in itself, is a sufficient reason for concluding that plaintiff should not be permitted to pursue his claims against the individuals further.

If one were to look at plaintiff's allegations from a standpoint of whether they state any claim upon which relief may be granted, they are woefully short of the specificity, particularity, and plausibility required by the Supreme Court decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), thus providing yet another basis for a dismissal of plaintiff's claims.

Nor does plaintiff fare any better in his attempt to extract money from Wise County. To whatever extent he has sued individuals in their official capacities, such a suit is tantamount to a suit against Wise County. And, the court is considering plaintiff's November 9, 2016 filing as a supplement to his complaint adding Wise County, Texas, as a named defendant. But, plaintiff has made no allegation, and offered no Spears hearing testimony, establishing any facts that would impose

27

liability on Wise County for any of the conduct about which he complains.  That would be true even if the court were to give credence to plaintiff's theory that one or more of the individuals he named as defendants used excessive force against him.  The conduct of the individual employees are not imputed to Wise County under the doctrine of respondeat superior, nor can Wise County be held liable for the conduct of its employees unless that conduct was pursuant to a policy or custom of Wise County that led to constitutionally violative conduct.  Monell v. York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). Thus, there are additional reasons why plaintiff's claims against Wise County must be dismissed as part of the court's screening process.

V.

### Order

For the reasons give above,

The court ORDERS that all claims and causes of action asserted in the above-captioned action against any person or entity designated as a defendant in any of the documents filed by plaintiff in this action, including Wise County, Texas, be, and

are hereby, dismissed pursuant to the authority of 28 U.S.C.

§ 1915A.

SIGNED November 22, 2016.

_____
JOHN McBRYDE
United States District Judge